173 U.S. 555 (1899)
COOPER
v.
NEWELL.
No. 184.
Supreme Court of United States.
Argued January 12, 13, 1899.
Decided April 3, 1899.
CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.
*565 Mr. F. Charles Hume for Cooper and others.
No appearance for Newell.
MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court:
The question is whether the judgment entered by the district court of Brazoria County, Texas, in favor of McGrael and against Newell, was open to the attack made upon it in the Circuit Court of the United States for the Eastern District of Texas. The record of the suit in which that judgment was entered showed a petition in the ordinary form of trespass to try title, filed May 20, 1850, alleging McGrael and Newell to be resident citizens of the county of Brazoria, Texas, and describing several different tracts of land, one of which was situated in Brazoria County, and, among the others, the tract in controversy, which was alleged to be situated then as now in Harris County, Texas; a demurrer and pleas signed by a person as "att'y for defendant," filed the same day; a verdict and judgment against Newell rendered and entered May 21, 1850. The record does not show that any process was issued on the petition and served on Newell, or any notice given to Newell by publication or otherwise; or affirmatively that the person signing the demurrer and pleas was authorized to do so.
The evidence on the trial of the present case in the Circuit Court must be taken as establishing that Newell was not a citizen nor a resident of Texas at the time the suit was commenced in the Brazoria County district court; that he was never served with any process in that suit and had no knowledge of its institution until many years thereafter; that the person who signed the pleadings for defendant was not Newell's attorney and had never been employed by him to represent him, and that any appearance made for Newell in the suit was without his knowledge or consent; that in that suit the property in controversy was not taken into the possession of the court by attachment, sequestration or other process; that Newell had never resided in Brazoria County, Texas, though he had resided in Galveston County prior to November, *566 1848, when he went to the city of Philadelphia, and resided there until 1853 or 1854, when he removed to the city of New York, where he resided up to the date of his death in 1891; and that during the period from November, 1848, to 1891 he was first a citizen and resident of Pennsylvania and then a citizen and resident of New York. This evidence was objected to on the ground that the judgment was rendered by a domestic court of general jurisdiction, and that want of jurisdiction cannot be established aliunde the record in a collateral proceeding.
In Thompson v. Whitman, 18 Wall. 457, a leading case in this court, it was ruled that "neither the constitutional provision that full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State, nor the act of Congress passed in pursuance thereof, prevents an inquiry into the jurisdiction of the court by which a judgment offered in evidence was rendered;" that "the record of a judgment rendered in another State may be contradicted as to the facts necessary to give the court jurisdiction; and if it be shown that such facts did not exist, the record will be a nullity, notwithstanding it may recite that they did exist;" and that "want of jurisdiction may be shown either as to the subject-matter or the person, or, in proceedings in rem, as to the thing."
But while these propositions are conceded, it is insisted that the Circuit Court of the United States for the Eastern District of Texas was bound to treat this judgment rendered by one of the courts of the State of Texas as if it were strictly a domestic judgment drawn in question in one of those courts, and to hold that it therefore could not be assailed collaterally.
We are of opinion that this contention cannot be sustained, and that the courts of the United States sitting in Texas are no more shut out from examining into jurisdiction than if sitting elsewhere, or than the courts of another State. A domestic judgment is the judgment of a domestic court, and a domestic court is a court of a particular country or sovereignty. Undoubtedly the judgments of courts of the United States are domestic judgments of the Nation, while in the particular *567 State in which rendered they are entitled to be regarded as on the same plane in many senses as judgments of the State; and so the judgments of the courts of the several States are not to be treated by each other or by the courts of the United States as in every sense foreign judgments. But the courts of the United States are tribunals of a different sovereignty, and exercise a distinct and independent jurisdiction from that exercised by the state courts, and this is true in respect of the courts of the several States as between each other. And the courts of the United States are bound to give to the judgments of the state courts the same faith and credit that the courts of one State are bound to give to the judgments of the courts of her sister States.
The same rule applies to each, and the question of jurisdiction is open to inquiry even when the judgment of the court of a State comes under consideration in a court of the United States, sitting in the same State. Christmas v. Russell, 5 Wall. 290; Galpin v. Page, 18 Wall. 350; Pennoyer v. Neff, 95 U.S. 714; Hart v. Sansom, 110 U.S. 151; Goldey v. Morning News, 156 U.S. 518.
In Pennoyer v. Neff, Mr. Justice Field, after discussing the question how far a judgment rendered against a non-resident, without any service upon him, or his personal appearance, was entitled to any force in the State in which it was rendered, said: "Be that as it may, the courts of the United States are not required to give effect to judgments of this character when any right is claimed under them. Whilst they are not foreign tribunals in their relations to the state courts, they are tribunals of a different sovereignty, exercising a distinct and independent jurisdiction, and are bound to give to the judgments of the state courts only the same faith and credit which the courts of another State are bound to give to them." 95 U.S. 732.
And in Goldey v. Morning News, 156 U.S. 518, 521, where the authorities are extensively cited, Mr. Justice Gray said: "It is an elementary principle of jurisprudence, that a court of justice cannot acquire jurisdiction over the person of one who has no residence within its territorial jurisdiction, except *568 by actual service of notice within the jurisdiction upon him or upon some one authorized to accept service in his behalf, or by his waiver, by general appearance or otherwise, of the want of due service. Whatever effect a constructive service may be allowed in the courts of the same government, it cannot be recognized as valid by the courts of any other government... . For example, under the provisions of the Constitution of the United States and the acts of Congress, by which judgments of the courts of one State are to be given full faith and credit in the courts of another State, or of the United States, such a judgment is not entitled to any force or effect, unless the defendant was duly served with notice of the action in which the judgment was rendered, or waived the want of such notice... . If a judgment is rendered in one State against two partners jointly, after serving notice upon one of them only, under a statute of the State providing that such service shall be sufficient to authorize a judgment against both, yet the judgment is of no force or effect in a court of another State, or in a court of the United States, against the partner who was not served with process... . So a judgment rendered in a court of one State, against a corporation neither incorporated nor doing business within the State, must be regarded as of no validity in the courts of another State, or of the United States, unless service of process was made in the first State upon an agent appointed to act there for the corporation, and not merely upon an officer or agent residing in another State, and only casually within the State, and not charged with any business of the corporation there... . The principle which governs the effect of judgments of one State in the courts of another State is equally applicable in the Circuit Courts of the United States, although sitting in the State in which the judgment was rendered. In either case, the court the service of whose process is in question, and the court in which the effect of that service is to be determined, derive their jurisdiction and authority from different governments."
It must be remembered that this action was commenced by Newell as a citizen of New York against citizens of Texas, in *569 the exercise of a right secured to him by the Constitution of the United States, and it would go far to defeat that right if it should be held that he was cut off in the Circuit Court from proving that he was not a citizen and resident of Texas when the controverted action was commenced, and that he had not authorized any attorney to appear for him in that action. As any provisions by statute for the rendition of judgment against a person not a citizen or resident of a State, and not served with process or voluntarily appearing to an action against him therein, would not be according to the course of the common law, it must follow that he would be entitled to show that he was not such citizen or resident, and had not been served or appeared by himself or attorney.
Accordingly, it was held in Needham v. Thayer, 147 Mass. 536, that a defendant in an action brought in Massachusetts on a judgment in personam in that State, might set up in defence that he was at the time the original action was brought a non-resident, and neither was served personally with process nor appeared therein.
And so in New York, when a judgment of a court of that State was drawn in question, which had been entered against a non-resident, who was not during the pendency of the proceedings within the jurisdiction of the State. Vilas v. Plattsburgh and Montreal Railroad Company, 123 N.Y. 440. There the rule that domestic judgments against a party not served, but for whom an attorney appeared without authority, cannot be attacked collaterally, was adhered to; yet the Court of Appeals declined to apply it to a case where the defendant was a non-resident and not within the jurisdiction during the pendency of the proceedings, such judgments being held to be not strictly domestic but to fall within the principle applicable to judgments of the courts of other States, in respect of which Andrews, J., delivering the opinion of the court, said: "It is well settled that in an action brought in our courts on a judgment of a court of a sister State the jurisdiction of the court to render the judgment may be assailed by proof that the defendant was not served and did not appear in the action, or where an appearance was entered by an attorney, *570 that the appearance was unauthorized, and this even where the proof directly contradicts the record."
We do not understand any different view to obtain in Texas. In Fowler v. Morrill, 8 Texas, 153, it was held that the acceptance of service of process by an attorney is only prima facie evidence of his authority. In Parker v. Spencer, 61 Texas, 155, the court decided that a judgment did not affect a party who had not been served, but who on the record appeared by an attorney not authorized to so appear, and it was said: "And as he had not been made a party to the suit by any of the modes known to the law, he could not be bound by the judgment. But he had the option either to have it vacated by direct proceeding or else to treat it as void in any collateral proceeding where rights might be asserted against him by reason of the same."
In Bender v. Damon, 72 Texas, 92, which is much in point, Chief Justice Stayton states the case as follows:
"The petition alleges substantially the facts necessary to be alleged in an action of trespass to try title, and the petition was so endorsed. Had it done this and no more, there could have been no ground for controversy in the court below as to its jurisdiction to hear and determine the cause, nor as to the sufficiency of the petition on general demurrer. The appellant, however, sought to remove cloud from his title, which a judgment in his favor in an action of trespass to try title would have accomplished as against the defendants, and to obtain this relief he undertook to show that appellees were claiming under a sheriff's sale and deed under an execution issued from the district court for Navarro County, on a judgment rendered by that court against him and in favor of S.J.T. Johnson, all of which he claimed were invalid.
"Some of the facts which he alleged to show the invalidity of that judgment, execution and sale, were such as might entitle him, by a proper proceeding, to have had them vacated, but not such as to render them void.
"The petition, however, went further, and alleged facts which, if true, would render the judgment void. It alleged that the plaintiff was a non-resident of this State; that he *571 never was cited to appear, and did not appear in person or by attorney in the proceeding in which the judgment in favor of Johnson and against himself was rendered; and that appellees claimed through an execution and sale made under a judgment so rendered. If these averments be true the judgment was void, and no one could acquire rights under it."
We think the Circuit Court was clearly right in admitting evidence to contradict the recital that Newell was a citizen and resident of Texas, and to show that the attorney had no authority to represent him.
Nor can this judgment be held conclusive on the theory that the suit of McGrael v. Newell was in the nature of a proceeding in rem. The property was not taken into custody by attachment, or otherwise, and the suit depended entirely on the statutes of Texas providing the procedure for the trial of the title to real estate, which contained at that time no particular provision for bringing in non-residents of the State. There was a statute providing generally that in suits against non-residents service could be had by publication, and that statute provided that if the plaintiff, or his agent, or attorney, when the suit was instituted, or during its progress, made affidavit before the clerk of the court that defendant was not a resident of the State of Texas, or that he was absent from the State, or that he was a transient person, or that his residence was unknown, then a citation should issue which should be published in a newspaper. Acts Texas, 1848, 106, c. 95. This statute was applicable to all suits, and so far as actions against non-residents were personal, judgment on citation by publication would not be conclusive. And the law also required that where any judgment was rendered on service by publication, the court should make out and incorporate with the records of the case a statement of the facts proven therein on which the judgment was founded. Acts Texas, 1846, 395. It is true that "it was within the power of the legislature of Texas to provide for determining and quieting the title to real estate within the limits of the State and within the jurisdiction of the court, after actual notice to all known claimants, and notice by publication to all other persons." Hamilton v. *572 Brown, 161 U.S. 256, 274; Arndt v. Griggs, 134 U.S. 316. But it would seem that there was no such statute at the time of the commencement of the McGrael suit, and that suit could only be regarded as a personal action and coming within the rule laid down in Pennoyer v. Neff, 95 U.S. 714.
Moreover, the record in McGrael v. Newell shows that the suit was not brought as against a non-resident of the State, it being alleged in plaintiff's petition that defendant resided in Brazoria County, Texas. So that even if it were held that the statutes of the State, taken together, authorized suits of this character to be brought against non-residents as proceedings in rem, this cannot be asserted as to this suit; and it affirmatively appeared that no citation by publication could have been had. The citation prayed for was to be addressed to the proper officer of Brazoria County, to be served on defendant as a resident of that county; no citation by publication was asked for, and no record of the facts on which the case was tried was kept as required by statute, and the whole case was tried as a case against a resident of Brazoria County appearing by attorney. The statute at that time provided that "any party to a suit, his agent or attorney, may waive the necessity of the issuance or the service of any writ or process required to be served on him in the suit, and accept such service thereof; provided, that such waiver or acceptance shall be made in writing, signed by such party, his agent or attorney, and filed among the papers of the suit, as a record." Acts Texas, 1846, 367. The record here showed no such acceptance or waiver of service.
Treated as a personal action, brought as against a resident, when the facts appeared that defendant was not a resident of the State of Texas and was not served in that State, and had not appeared by attorney, then the judgment ceased to be binding. The result is the same if the suit were regarded as brought under a statute making provision for the bringing of suits to settle the title to lands in Texas, since that proceeding would have been purely statutory, and not according to the course of the common law, and the record did not show that it was instituted in the manner required by the statute, or appearance *573 had or waived as required, or that the jurisdiction of the court in fact so attached as to authorize the court to render the judgment. Galpin v. Page, 18 Wall. 350.
It follows that the question propounded must be
Answered in the affirmative.